Accordingly, I respectfully concur in the result.

**Dylan T. FAIRCLOTH, Appellant**

**v.**

**COMMONWEALTH OF PENNSYLVANIA, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs May 16, 2014.

Decided July 1, 2014.

Publication Ordered Sept. 5, 2014.

Timothy M. Barrouk, Harrisburg, for appellant.

Terrance M. Edwards, Assistant Counsel, Harrisburg, for appellee.

BEFORE: RENÉE COHN JUBELIRER, Judge, and MARY HANNAH LEAVITT, Judge, and ROCHELLE S. FRIEDMAN, Senior Judge.

---

OPINION BY Senior Judge FRIEDMAN.

Dylan T. Faircloth (Licensee) appeals from the November 22, 2013, order of the Court of Common Pleas of Cumberland County (trial court), which dismissed Licensee's appeal from the operating privilege suspension imposed by the Commonwealth of Pennsylvania, Department of Transportation, Bureau of Driver Licensing (DOT) for Licensee's refusal to submit to chemical testing after his arrest for violating section 3802 of the Vehicle Code.[1] We affirm.

On April 2, 2013, DOT suspended Licensee's operating privilege, effective May 7, 2013, for one year for his refusal to submit to chemical testing on March 1, 2013, in violation of section 1547(b)(1) of the Vehicle Code, 75 Pa.C.S. § 1547(b)(1), commonly referred to as the Implied Consent Law. Licensee appealed, and the trial court held a *de novo* hearing on November 13, 2013.

At the hearing, Pennsylvania State Trooper Scott Bowes testified that, on March 1, 2013, an off-duty corporal from the Newville Borough Police Department began to follow a vehicle traveling northbound on Interstate 81 in Cumberland County that was moving erratically, swerving, and had almost crashed. The off-duty corporal called the dispatcher, who then relayed the information to Trooper Bowes. Trooper Bowes located the vehicle and followed it for approximately two minutes. (Trial Ct. Op., 2/14/14, at 1.)

Trooper Bowes observed the vehicle swerve in and out of its lane and cross the fog line three times. After the vehicle crossed the fog line for the third time, Trooper Bowes pulled it over. Trooper Bowes observed Licensee operating the vehicle, a bottle of vodka in the center console, and smelled an odor of alcohol on Licensee's breath. Trooper Bowes asked Licensee where he was coming from and Licensee responded, "Harrisburg." However, Licensee was traveling north on Interstate 81 toward Harrisburg. Trooper Bowes observed that Licensee was a little sluggish and slow to respond. Licensee denied having had anything to drink, whereupon Trooper Bowes asked him to exit the vehicle. (*Id.* at 2.)

Trooper Bowes administered a number of field sobriety tests, which Licensee could not complete.[2] Licensee then refused to submit to a preliminary breath test. Trooper Bowes placed Licensee under arrest for DUI and transported him to the hospital for a blood test. (*Id.* at 2–3.)

At the hospital, Trooper Bowes read Form DL–26, which contains the implied consent warnings, to Licensee. Licensee agreed to sign the form but refused to take the blood test. The hospital did not administer the blood test. (*Id.* at 3.)

Following Licensee's cross-examination of Trooper Bowes, DOT rested. Licensee did not testify or offer any other evidence. On November 22, 2013, the trial court dismissed Licensee's appeal. Licensee now appeals to this court.[3]

Licensee contends that the trial court erred in dismissing his appeal because no

---

**1.** 75 Pa.C.S. § 3802. Section 3802 of the Vehicle Code relates to driving under the influence (DUI) of alcohol or a controlled substance.

**2.** Licensee testified that he informed Trooper Bowes that he had knee problems that could potentially compromise the result of the field tests.

**3.** Our scope of review is limited to determining whether the trial court's decision is supported by substantial evidence, whether an error of law occurred, or whether the decision indicates a manifest abuse of discretion. *Stahr v. Department of Transportation, Bureau of Driver Licensing*, 969 A.2d 37, 39 n. 2 (Pa.Cmwlth.2009).

exigent circumstances justified a warrantless blood draw and, therefore, the blood draw violated Licensee's rights under the Fourth Amendment to the United States Constitution.[4] Specifically, Licensee cites *Missouri v. McNeely*, —— U.S. ——, 133 S.Ct. 1552, 185 L.Ed.2d 696 (2013), and contends that the Implied Consent Law is unconstitutional as applied because the Fourth Amendment protects Licensee's right to deny consent to a warrantless blood draw where exigent circumstances are not present.

In *Missouri*, McNeely was asked to submit to chemical testing, he refused and the arresting officer, without obtaining a warrant, directed the hospital staff to take a blood sample. McNeely tried to suppress the results in a criminal matter, arguing that the warrantless blood draw violated his Fourth Amendment rights. The issue before the United States Supreme Court was "whether the natural dissipation of alcohol in the bloodstream establishes a *per se* exigency that suffices on its own to justify an exception to the warrant requirement for nonconsensual blood testing in drunk-driving investigations." *Id.* at 1558. The Supreme Court held that in a drunk-driving case, whether a warrantless blood draw is reasonable must be determined on a case-by-case basis, considering the totality of the circumstances. *Id.* at 1563.

However, *Missouri* does not apply to the present controversy. *Missouri* relates to suppression of an involuntary blood draw in a criminal matter, *see id.* at 1557, whereas this case involves the civil consequences of refusing to submit to a blood draw. Licensee was not forced to provide a blood sample or subjected to a search against his will after he refused; he merely forfeited his operating privilege as a result of the refusal. *See also Vora v. Department of Transportation, Bureau of Driver Licensing*, 79 A.3d 743, 747 (Pa. Cmwlth.2013), *appeal denied*, 89 A.3d 1286, 2014 Pa. LEXIS 1001, 2014 WL 1672021 (Pa., No. 931 MAL 2013, filed April 16, 2014). (finding that reliance on a criminal case is misplaced in an administrative appeal from a license suspension). Licensee was not subjected to a search against his will.

The Pennsylvania Supreme Court has determined that under 75 Pa.C.S. § 1547(b), a licensee has "no constitutional right to refuse chemical testing" because "driving in Pennsylvania is a civil privilege conferred on individuals who meet the necessary qualifications set forth in the Vehicle Code." *Commonwealth v. Stair*, 548 Pa. 596, 699 A.2d 1250, 1255 (1997).

[O]ne of the necessary qualifications to continuing to hold that privilege is that a motorist must submit to chemical sobriety testing, when requested to do so by an authorized law enforcement officer in accordance with the prerequisites of the Implied Consent Law.[5] The obligation to submit to testing is related specifically to the motorist's continued enjoyment

---

4. The Fourth Amendment to the United States Constitution protects against unreasonable searches and seizures. U.S. Constitution, Amend. IV.

5. Section 1547(a) of the Implied Consent Law provides in relevant part:

Any person who drives, operates or is in actual physical control of the movement of a vehicle in this Commonwealth *shall be deemed to have given consent* to one or more chemical tests of breath, blood or urine for the purpose of determining the alcoholic content of blood ... if a police officer has reasonable grounds to believe the person to have been driving, operating or in actual physical control of the movement of a vehicle....

75 Pa.C.S. § 1547(a) (emphasis added).

of the privilege of maintaining his operator's license.

*Id.* at 1255–56. Therefore, Licensee did not have a constitutional right to refuse the blood draw.[6]

Accordingly, we affirm.

### *ORDER*

AND NOW, this *1st* day of *July,* 2014, we hereby affirm the November 22, 2013, order of the Court of Common Pleas of Cumberland County.

---

**6.** Licensee also contends that the Implied Consent Law is unconstitutional because section 3804(c) of the Vehicle Code, 75 Pa.C.S. § 3804(c), authorizes enhanced criminal punishment for exercising a constitutional right to deny a chemical blood draw. We note that any enhanced punishment pursuant to section 3804(c) of the Vehicle Code is not before this court because that punishment is criminal in nature. The only issues before this court are the civil consequences facing Licensee under the Implied Consent Law.